274 P.2d 1002

The STATE of Idaho, ex rel. MODERN MO- TOR COMPANY, Inc., an Idaho corpora- tion, Plaintiff-Respondent, v. H & K CONSTRUCTION COMPANY, Inc., an Idaho corporation; The Fidelity and Cas- ualty Company of New York, a New York corporation; Blue Bell Oil Company, Blackfoot, Idaho; Earl Rice; Grant Old- ham, doing business as O K Rubber Weld- ers; Walker, Jensen & Herbst; L. G. Hel- gerson; and Herbert Eilmes, Defendants- Appellants.

No. 8120.

Supreme Court of Idaho.

Oct. 7, 1954.

Zener & Peterson, Pocatello, for appellants.

H. Wm. Furchner, Blackfoot, for respondent.

494

GIVENS, Justice.

The H & K Construction Company, an Idaho corporation, contracted with the State of Idaho, through its Highway Commissioners, to construct 11.172 miles of the Lost River Highway between Arco and Big Lost River in Butte County, being Federal Aid Project No. F-1381(1), Contract No. 1489, and as principal, executed with the Fidelity and Casualty Company of New York as surety, a bond for $368,464.90 securing payments for labor, materials and supplies for such work, in compliance with Section 45-502, Idaho Code.

The H & K Construction Company subcontracted to the Mountain States Construction Company, Inc., an Idaho corporation, the furnishing of, and spreading, watering and rolling specified amounts of crushed gravel. The latter Company in turn, with the knowledge and consent of the H & K Company, entered into a working agreement with R. A. Craig to perform such work, which in part he did between July 10, 1951 and September 12, 1951, when his financial difficulties ended his participation.

The entire project was completed and accepted by the State of Idaho October 19, 1951.

Respondent claims to have furnished supplies, material and labor to Craig for such work, with a balance therefor unpaid by Craig of $5,139.96. It complied with the necessary concomitant statutory requirements and joining, as required, other claimants as defendants, April 17, 1952 sued the H & K Construction Company and its above named surety for such amount and $500 attorney's fees, listing in its amended complaint February 24, 1953, some 277 odd separate charges covering gas, oil, tires, tubes, repairs to and servicing of equipment, labor, parts and hardware.

Appellants H & K Construction Company and Fidelity & Casualty Company admitted the contracts, etc., but denied the materials and services claimed to have been furnished to Craig by respondent Company, except for a few items, were used in or went into the work performed by Craig in his contract with the Mountain States Construction Company and denied that it has not been paid in full or that it is entitled to attorney's fees.

By agreement the case was tried to the court without a jury. The court, with meticulous scrutiny of the evidence, rejected certain claimed items, but found otherwise in favor of respondent in the sum of $4,704.53 and $500 attorney's fees and so entered judgment.

In appellants' appeal, the assignments of error all focus on the insufficiency of the evidence to prove that the items, as found by the court, were actually delivered to the

project or were used, necessary, incidental, and consumed in whole or in part in the prosecution of the work by Craig.

The burden of proof was, of course, on respondent, 40 C.J.S., Highways, § 210(8), p. 188, but the coverage of the bond is to be liberally construed and not limited to labor and materials that are lienable under the mechanics' lien law in its relation to private structures, but all labor or materials that directly or indirectly contribute to the construction of the work, are covered; thus including repairs, parts, (furniture) hardware, gas, oil, servicing and labor and other similar items, but not tools or new equipment, except as actually consumed on the job. People v. Storm, 49 Idaho 246, 287 P. 689; Franzen v. Southern Surety Co., 35 Wyo. 15, 246 P. 30, 46 A.L.R. 496, 503; State for Use of Wadsworth v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A.L.R. 296; H. Earl Clack Co. v. Staunton, 105 Mont. 735, 72 P.2d 1022.

"All materials and supplies purchased, sold, and delivered for use on the project of the nature we have described, and reasonably useful and consumable in the performance of the contract, and in contemplation when it is executed, and fairly within its terms, the court or jury trying the facts may infer are secured by the bond conditioned as provided by law, unless the evidence rebuts the inference. We do not think that the burden is upon the claimant in the first instance to prove by direct evidence that the supplies were used for the job, but that this may be inferred from the circumstances. (Cases)." United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622, at page 627.

"Mr. Caddell, an employee of appellee, testified fully as to the shipment of asphalt by appellee consigned to Ted B. Smith in care of the Highway Department, Merkel, Texas. There is evidence that Ted B. Smith was not doing any construction work at any place near Merkel except on the farm to market road in question. There is no evidence that any of the asphalt delivered to Ted B. Smith at Merkel was diverted and not used on the construction of the project involved. The evidence is such that the trial court could, and presumably did find, that all of the asphalt was used by Smith in the prosecution of the Taylor County project.

" 'It is not necessary for a materialman to prove by direct evidence that his supplies sold for the construction of the highway, being reasonably suitable and appropriate to it, were in fact so used, if this may be inferred from the circumstances.' 40 C.J.S., Highways, § 210, p. 188.

"We believe the fact of the use of the material upon the highway may be reasonably inferred from all the facts

496

and circumstances in this case. * * " Houston Fire & Casualty Ins. Co. v. Col-Tex Refining Co., Tex.Civ.App., 231 S.W.2d 468, at page 470.

Craig was not at the trial.

██ Alfred L. Hahn, President of respondent Company, testified charge slips covering all items were given to Craig or his employees, and as to many items, he personally knew the parts were furnished for and repairs made on, and gas and oil placed in, Craig's equipment; that he had sold several of Craig's trucks to him; that he, Hahn, was often out at the job some 55 miles west of Blackfoot, site of respondent's place of business; that he there saw this equipment being used by Craig's employees, whom he knew and recognized and who were in the Company's garage in Blackfoot having the equipment serviced and repaired and there also secured gas and oil.

That the charge slips were made in the regular course of the Company's way of doing business and delivered to Craig or his employees; that Craig was not engaged in any other highway construction work of this kind in that locality or vicinity on which the equipment was used; except for some two days' excavating and hauling for a house in Blackfoot.

Earl H. Gough, Craig's foreman on the job, substantiated in considerable detail Hahn's testimony covering repairs, servicing and securing of parts and materials for Craig's equipment from respondent Company, how and where used and the need therefor. Both Hahn and Gough described in detail the effect of the hard rough usage and terrain traversed to and from the rock crusher, on the equipment; the wear and tear, breakdowns of the rock crusher, and the consequent necessary repair work. Such arduous work conditions were, in part, recognized by appellants' witnesses.

W. D. Hale, President and General Manager for Mountain States Construction Company, testified H & K Construction Company furnished gas and oil at Arco to respondent and appellants argue therefrom, and estimates on the mileage of Craig's trucks on the job, that he could not legitimately have used the additional amounts furnished by respondent. Hale conceded in his estimates he did not take into consideration gas and oil in connection with respondent's necessary use of a water truck, pickup truck, and Craig's car used by him on the job. Also, some of the gas and oil secured from respondent was used by Craig's equipment in going to and from Blackfoot for repairs and service.

Appellants' showing of the use of gas and oil furnished by them to offset respondent's claim, was no more definite as to actual use on the job than respondent's evidence.

Without further and unnecessary elaboration and delineation of all the evidence, it was sufficient to justify and sustain the trial court's discriminative findings and

conclusions. He saw and heard the witnesses and it was for him to draw legitimate inferences and deductions.

Section 45–502, Idaho Code, provides for attorney's fees and the amount herein is reasonable.

The judgment is affirmed. Costs to respondent.

PORTER, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.