The **COLORADO BUILDERS' SUPPLY CO.,**
a corporation, Appellant (Plaintiff below),

v.

**NATIONAL FIRE INSURANCE COMPANY,**
a corporation, Appellee (Defendant below).

No. 3541.

Supreme Court of Wyoming.

Feb. 1, 1967.

B. J. Baker, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellant.

James L. Applegate of Hirst, Applegate & Thomas, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The Colorado Builders' Supply Co., claiming to have furnished materials for highway contractor Donald J. Kelley, in connection with a road contract at Lucerne, Wyoming, brought suit against Kelley and his bonding company, National Union Fire Insurance Company, for an unpaid bill. Kelley, being a nonresident of Wyoming, was not served with process and suit proceeded against the bonding company only.

There is no material dispute as to the facts in the case, but there is substantial disagreement as to what inferences may be drawn from those facts. The trial court construed the facts favorable to defendant-bonding company and gave judgment for the defendant. The plaintiff, Colorado Builders', has appealed. Its claim is that the bonding company is liable for the items furnished to Kelley, by operation of Wyoming's bonding statute.

Ch. 173, § 1, S.L. of Wyoming, 1963 (§ 9–674, W.S.1957, 1965 Cum.Supp.) provides in pertinent part as follows:

"Whenever any contract shall be entered into with the state * * * for any public work or improvement and the contract price exceeds the sum of five hundred dollars ($500.00), the contractors, shall be required before beginning work under said contract to execute a bond to the state, * * * for the use and benefit of all persons who may perform any work or labor or furnish any material or goods of any kind which were totally or partially used or expended in the execution of such contract, conditioned * * to pay as they become due all just claims for work or labor performed and materials furnished * * *."

Appellants contend the language of this statute is broader in its scope than the statutes of other states; and that the bond written for Kelley by National Union covered the materials furnished to Kelley because such materials were "partially used" in the execution of Kelley's contract on the Lucerne project.

■ It is undisputed that Kelley had two contracts with the State of Wyoming. One was for the Lucerne project. The other was for a project at Moorcroft, Wyoming. National Union bonded Kelley for both projects. The Moorcroft project was finished first, but plaintiff did not commence its action within the required one year after the first publication of notice of final payment of the Moorcroft contract. Therefore, the plaintiff's right of action on the Moorcroft bond was barred by limitations, under the provisions of § 9–677, W.S.1957.

This leaves for our decision the question of whether plaintiff as a matter of law is entitled to recover for the materials furnished, from Kelley's Lucerne project bond, where its action was timely, under the following state of facts:

When Kelley entered into his two contracts with the state and obtained his bonds

from defendant–National Union, he had a used rock crusher. This crusher was moved onto the Lucerne project and there used for some time. Plaintiff claims the crusher became in need of repairs on the Lucerne job. It admits, however, that use of the crusher at Lucerne was discontinued for the additional reason that freezing conditions at the crushing site made it difficult to work on the project.

The crusher, after its use was discontinued at Lucerne, was moved to the yard of an equipment company in Casper, Wyoming, where extensive repairs were made. It was then taken to Moorcroft and used on the Moorcroft project. Additional repairs were also made while the crusher was on the Moorcroft job. Materials for the repairs in Casper and at Moorcroft were furnished by plaintiff and such materials are the subject matter of plaintiff's action.

The primary basis for such action is the fact that following completion of the Moorcroft job the crusher was again returned to Lucerne and used in the completion of the job there. Thus, the crusher was actually used for both of Kelley's projects, after repairs were made with materials furnished by the plaintiff.

Appellant takes the position that recent amendments to our bonding statute in Wyoming have done away with the "substantial consumption" test for determining whether items are covered by bonds, and under Ch. 173, items are covered by a bond if such items are "partially used" in the execution of a contract. Under this theory, it could be said the materials for repairs were partially used on each of the two projects we have mentioned. And by the same token, it could be said such materials were partially used on every other project where Kelley used his crusher after the repairs were made.

We deem the question of whether materials are "partially used or expended" in execution of a contract, within the intent of Ch. 173, one for the trier of fact. We have already indicated there is no material conflict as to what actually happened,

but in addition to a finding of facts, the trial court has the responsibility of determining what inferences are reasonably to be drawn from those facts. It is, of course, incumbent upon us to give the evidence in the case every reasonable inference which can be drawn in favor of the successful party below. Frontier Refining Company v. Kunkel's, Inc., Wyo., 407 P.2d 880, 881.

When are materials which go into repairs "partially used or expended" in execution of a contract, within the meaning of Ch. 173? That was the question confronting the trial judge as trier of the facts. It is true Kelley's crusher was used both at Moorcroft and at Lucerne after materials were furnished by plaintiff for repairs, but such use was at Moorcroft first and at Lucerne second. It is reasonable to believe the crusher has also been used on many more projects as well, or at least that it was repaired for use on many projects.

We find much authority for the general proposition that labor and materials to repair a contractor's machinery are within the coverage of the contractor's bond, where the repairs are reasonable and necessary to keep the equipment in operating condition in order to perform the contract for which the bond has been issued.

However, as recognized in Franzen v. Southern Surety Co., 35 Wyo. 15, 246 P. 30, 34, 46 A.L.R. 496, there must be some limit to the liability of a surety company. One of the limitations recognized in the Franzen case, and generally in other cases brought to our attention, is that a bonding company is not to be liable for the purchase price of machinery or other material which constitutes part of the plant or outfit of a contractor. See State ex rel. Modern Motor Co. v. H & K Construction Company, 75 Idaho 492, 274 P.2d 1002, 1003.

Other cases indicate not even necessary repairs ought to come under the coverage of the bond, unless such repairs are of an incidental and comparatively inexpensive character, representing only ordinary wear and tear or equivalents thereof. Western

Material Co. v. Enke, 56 S.D. 302, 228 N.W. 385, 388. See also General Motors Truck Co. v. Phillips, 191 Minn. 467, 254 N.W. 580, 581–583.

The cases we have reviewed on the question of recovery for repairs to machinery and equipment do not lay down any definite rule as to what items are or are not covered by the contractor's statutory bond. If we accept the proposition that the purchase price of machinery and equipment is not covered, it then becomes doubtful whether repairs should be covered, if the repairs are not made while the machinery is on the job in question and if the repairs do not appear to have been made strictly for completion of the bonded job.

When machinery is actually on a job and repairs become necessary to keep it in operating condition, to the end that the job may be completed, the bond in such a case ought to cover the repairs. However, the trial judge in the case at bar was entitled to believe, from the evidence, that repairs were made on Kelley's crusher—not to the end that the Lucerne project could be completed, but rather to the end that the Moorcroft contract could be fulfilled.

Under these circumstances, the trial court was justified in applying the same rule it would have applied if Kelley had purchased a new crusher. We are not prepared to say, as a matter of law, the trial court should have found that the materials furnished by plaintiff were used in the execution of the Lucerne contract. They were used to repair a machine not then on the Lucerne job, and such materials were not items actually consumed in the Lucerne project.

 When future projects are worked on after repairs have been made to a contractor's machinery, the repaired machinery becomes the same as purchased equipment constituting the plant and outfit of the contractor. It would be remote and speculative to say how far into future projects repairs could be carried over, if equipment already repaired were not treated the same as new equipment constituting a part of the contractor's plant. We have often condemned the indulging of conclusions which are remote and speculative. State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, 869–879, rehearing denied 371 P.2d 408.

These things considered, we cannot say it was necessarily erroneous for the trial court in this instance not to consider the repairs in question the same as reasonable and necessary repairs made on the job, in order to keep the contractor's equipment in operating condition for completion of his contract. See again State ex rel. Modern Motor Co. v. H & K Construction Company, 75 Idaho 492, 274 P.2d 1002, 1003. We must, therefore, sustain the district court.

Affirmed.